| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>DISTRICT OF NEW JERSEY | |
| FORMAN HOLT<br>365 West Passaic Street, Suite 400<br>Rochelle Park, NJ 07662<br>Telephone:  (201) 845-1000<br>Facsimile:  (201) 655-6650<br>Attorneys for Charles M. Forman, Chapter 7 Trustee<br>Kimberly J. Salomon, Esq.<br>ksalomon@formanlaw.com | |
| In Re:<br><br>PRATIK PATEL,<br><br>       Debtor. | Chapter   7<br><br>Case No. 23-17327 (JNP)<br><br>Hon. Jerrold N. Poslusny, Jr. |
| CHARLES M. FORMAN, as Chapter 7 Trustee for the Estate of Pratik Patel,<br><br>       Plaintiff,<br> v.<br><br>ANKIT SONI, ASHISH PATEL, ASHWIN PATEL, ATUL FOVA, AVANI PATEL, BALVANTHBHAI S. PATEL, BARO CONSTRUCTION, BHAVIN DILIPBHAI PATEL, BHAVIN PATEL, BHAVINI CHAMPANERIA, BONA PATEL, BRIJESH PATEL, CHIRAG SHIROEYA, HIRAL SHAH, CHIRAGBHAI PATEL, DANNISH DARBAR, DIPAK T. PATEL, DIVYESH PATEL, GAURAV PATEL, HARSH PATEL, HEMAXIBEN PATEL, HIMANSHU BAXI, ILA S. PATEL, JAYESH PATEL, JINALIBEN H. PATEL, JUBIN KOTHARI, KAMLESH H. PATEL, KARAN PATEL, MAGIUL NEW, MANDAKINI PATEL, BABUBHAI PATEL, MAYANK SOJATIA, MEENA PATEL, MICHAEL D. KLEINBERG, MOHIT ATODARIA, NIRAV K. AMIN, PRATHNA RANA, SANDIPKUMAR PATEL, SHAILESH PATEL, SHIVANGINI RANA, SHRADDHA PATEL, SUDHIR PATEL, SUNIL T. PATEL, VIJAYKUMAR PATEL, VINOD PATEL, VISHALKUMAR PATEL, VIVEK SANGHAVI, 3BL ENTERPRISES INC., BANSARI PATEL, BHARATKUMAR T. RANA, DARPAN DHIMMAR, | Adv. Pro. No. 24- |

DARSHANKUMAR DHIMMAR, HITESH PATEL, INDUMATI DHIMMAR, KINGS INN HOTEL, KIRITKUMAR PATEL, KUSH PATEL, SUDARSHAN MATMUDAR, VANDANA PATEL, YEUNG CONTRACTORS LLC, and DHARMIBEN PATEL,

Defendants.

# COMPLAINT

Charles M. Forman, the chapter 7 trustee and plaintiff herein (the "Trustee" or "Plaintiff") for the estate of Pratik Patel (the "Debtor"), through his attorneys, Forman Holt, as and for his Complaint against Ankit Soni, Ashish Patel, Ashwin Patel, Atul Fova, Avani Patel, Balvanthbhai S. Patel, Baro Construction, Bhavin Dilipbhai Patel, Bhavin Patel, Bhavini Champaneria, Bona Patel, Brijesh Patel, Chrag Shiroeya, Hiral Shah, Chiragbhai Patel, Dannis Darbar, Dipak T. Patel, Divyesh Patel, Gaurav Patel, Harsh Patel, Hemaxiben Patel, Himanshu Baxi, Ila S. Patel, Jayesh Patel, Jinaliben H. Patel, Jubin Kothari, Kamlesh H. Patel, Karan Patel, Magiul New, Mandakini Patel, Babubhai Patel, Mayank Sojatia, Meena Patel, Michael D. Kleinberg, Mohit Atodaria, Nirav K. Amin, Prathna Rana, Sandipkumar Patel, Shailesh Patel, Shivangini Rana, Shraddha Patel, Sudhir Patel, Sunil T. Patel, Vijaykumar Patel, Vinod Patel, Vishalkumar Patel, Vivek Sanghavi, 3BL Enterprises Inc., Bansari Patel, Bharatkumar T. Rana, Darpan Dhimmar, Darshankumar Dhimmar, Hitesh Patel, Indumati Dhimmar, Kings Inn Hotel, Kiritkumar Patel, Kush Patel, Sudarshan Matmudar, Vandana Patel, Yeung Contractors LLC and Dharmiben Patel (collectively, the "Defendants") alleges that:

## NATURE OF THE PROCEEDING

1. This adversary proceeding arises from the Debtor's perpetration of and participation in a nationwide Ponzi scheme to defraud dozens of individuals and small business

{F0207780 - 1}    2

owners with the promises of either substantial returns on their loans to the Debtor and his associates, or the false promise of hotel supplies, goods, and services that were purchased from, but never provided by the Debtor.

2.  The Debtor has an ownership interest in, and operates two motels in Bergen County, New Jersey. Between 2020 and 2023, the Debtor solicited loans from dozens of individuals in connection with his hotel business, which he promised to repay with interest in a short period of time. Despite the Debtor's representations to his lenders, the loans were never used in connection with his hotel business. Rather, the loans flowed through his personal bank account and were used to repay other lenders as well as to enrich his friends, business associates, and himself.

3.  The Debtor was also an employee of Janvi Hotel Supply, LLC ("Janvi"), a limited liability company owned by his friend, Viral L. Patel. Through his employment with Janvi, the Debtor solicited loans on behalf of Janvi with the false promise of quick and profitable returns or sold goods and services to customers but never delivered the goods and services that were sold. In many instances, the Debtor personally received money from Janvi's customers, deposited that money into his personal bank account, and used that money to pay his personal and business liabilities in furtherance of his fraudulent scheme.

**JURISDICTION AND VENUE**

4.  This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §1334 and 11 U.S.C. §§105, 541, 547, 548, 550, 551 and 704.

5.  This adversary is a core proceeding pursuant to 28 U.S.C. §157(b)(2)(A), (C), (E), (F), (H) and (O).

6. This adversary proceeding arises under the United States Bankruptcy Code, 11 U.S.C. §101 *et seq.* (the "Bankruptcy Code") and arises in and relates to a chapter 7 case pending in this District.

7. Venue before this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## FACTUAL BACKGROUND

8. On August 23, 2023 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code.

9. On August 24, 2023, the Office of the United States Trustee appointed the Trustee to serve as the chapter 7 trustee in the Debtor's case and he continues to serve in that capacity.

10. The Debtor and his family have been involved in the hotel business for many years.

11. As of the Petition Date, the Debtor was a 50% co-owner of Jala Upper Saddle River, LLC ("Jala"), a New Jersey limited liability company, together with his brother-in-law, Viral M. Patel[1]. Jala owns a motel located at 255 State Route 17, Upper Saddle River, New Jersey known as the Fair Motel.

12. As of the Petition Date, the Debtor also was a 25% co-owner of Ram Si Hospitality, LLC ("Ram Si"), a New Jersey limited liability company, together with Viral M. Patel, Minesh Patel, and Jitendra Patel. Ram Si owns a motel located at 425 State Route 17, Ramsey, New Jersey known as Ramsey Inn & Suites.

13. The Debtor is the sole owner of Alaya Realty, LLC, a New Jersey limited liability company, which manages Ramsey Inn & Suites.

14. Prior to the Petition Date, the Debtor was also employed by Janvi. Upon information and belief, the Debtor never had any equity ownership interest in Janvi.

---

[1] Viral M. Patel is not the same person as Viral L. Patel, the owner of Janvi Hotel Supply, LLC.

{F0207780 - 1}    4

15. At the Debtor's §341 Meeting of Creditors, the Debtor testified that the cause of his bankruptcy filing was his employment with Janvi. He testified that he signed some promissory notes on behalf of Janvi and couldn't repay them, which resulted in personal financial difficulties that led to his bankruptcy filing.

### The Fraudulent Ponzi Scheme

16. Between 2020 and 2023, the Debtor engaged in a money lending enterprise commonly known as a Ponzi scheme which defrauded dozens of individuals nationwide out of millions of dollars.

17. The Debtor used his extensive social network to solicit short term loans from small businesses, families, and individuals throughout the United States by fraudulently misrepresenting the purpose of the loans, misrepresenting or exaggerating his assets and his ability to repay the loans, and by promising a high interest rate on the loan repayment over a short period of time. In some cases, the loans were obtained for the Debtor's personal use and in other cases the loans were obtained on behalf of Janvi.

18. The proceeds of the loans obtained by the Debtor primarily were used to pay off loans to others and to enrich the Debtor, his friends, and associates.

   a. **DRRS Family, LP**

19. In or about September of 2022, the Debtor solicited a loan from Dr. Dipak T. Patel ("Dipak") and his wife, Rina Patel ("Rina"), in El Paso, Texas, on behalf of Janvi. Upon information and belief, Dipak and/or Rina are principals of DRRS Family, LP ("DRRS"), a Texas limited partnership.

20. At all relevant times, the Debtor represented himself to Dipak and Rina as the owner of Janvi.

21. The Debtor requested a loan from Dipak and Rina on behalf of Janvi and fraudulently stated that the loan proceeds would be used to purchase hotel supplies in furtherance of Janvi's business ventures. The Debtor promised Dipak and Rina that the loan would be repaid in a short period of time at a "good" interest rate.

22. The Debtor also solicited a loan from Dipak and Rina for the alleged purpose of renovating the Williamston Inn in North Carolina, a hotel owned by the Debtor's business associates, Keyurkumar Patel and Priyanka Patel, through their corporation, Kiyaan, Inc.

23. The Debtor told Dipak and Rina that if they invested in the Williamston Inn renovation they would "double their money".

24. To induce Dipak and Rina to make the requested loan, the Debtor fraudulently portrayed himself as a successful businessman, bragging about his hotel business and other financial ventures in which he was involved.

25. The Debtor falsely represented to Dipak and Rina that he owned successful businesses and property in India.

26. The Debtor sent Dipak and Rina a photograph of his personal drivers' license as proof of his identification. Upon information and belief, the photograph of the Debtor's drivers' license was taken from inside a Lamborghini sport utility vehicle to further support the Debtor's fraudulent self-portrayal as a successful businessman. At no time has the Debtor ever owned a Lamborghini sport utility vehicle.

27. On or about September 12, 2022, DRRS and Janvi entered into a loan agreement by signing a loan agreement (the "DRRS Loan") and promissory note (the "DRRS Note") for a $1 million loan from DRRS to Janvi. Janvi also executed a security agreement (the "DRRS Security Agreement") which granted DRRS a security interest in all of Janvi's assets.

28. The DRRS Note provided for repayment of the full amount of the loan plus 11% interest within ninety (90) days.

29. Both the DRRS Loan and the DRRS Security Agreement were signed by the Debtor on behalf of Janvi, even though the Debtor had no ownership interest in or control over Janvi. The DRRS Note was signed by Viral L. Patel.

30. The same day the DRRS Loan was signed, the Debtor, Viral L. Patel, Keyurkumar Patel and Priyanka Patel each individually executed personal guarantees for the repayment of the DRRS Loan and Note.

31. Paragraph 7 of the personal guarantee executed by the Debtor falsely represents that he is the "owner of a direct or indirect interest" in Janvi.

32. On September 15, 2022, DRRS issued a wire transfer of $800,000 to Janvi's bank account at JP Morgan Chase Bank in connection with the DRRS Loan.

33. On October 18, 2022, DRRS issued a wire transfer of $200,000 to the Debtor's personal bank account at JP Morgan Chase Bank in connection with the DRRS Loan.

34. The Debtor used the $200,000 he received from DRRS to pay his personal Apple Card ($8,068.86) and American Express ($2,000) credit cards, made an online payment to Parx Casino ($3,091.45), and partially repaid a personal loan to one of his creditors, Kamlesh Patel ($50,000), among other things.

35. The Debtor solicited an additional $600,000 loan (the "Supplemental Loan") from DRRS, which DRRS agreed to make to Janvi under the same terms of the DRRS Loan and Note.

36. To induce DRRS to loan Janvi more money, on November 15, 2022, Janvi issued a wire transfer of $200,000 to DRRS as a partial repayment of its original loan. In addition, on

December 12, 2022, the Debtor issued a wire transfer of $9,789.00 to Dipak from his personal bank account.

37. On November 28, 2022, at the Debtor's direction, DRRS issued a wire transfer of $50,000 to the personal bank account of Govindbhai S. Patel in connection with the Supplemental Loan. Govindbhai S. Patel was not a personal guarantor of the DRRS Loan or the Supplemental Loan.

38. On November 29, 2022, DRRS issued a wire transfer of $217,000 to Janvi's bank account at JP Morgan Chase Bank in connection with the Supplemental Loan.

39. On January 9, 2023, DRRS issued a wire transfer of $333,000 to Janvi's bank account at JP Morgan Chase Bank in connection with the Supplemental Loan.

40. The Debtor scheduled the entire $1.6 million debt owed to DRRS on Schedule F of his chapter 7 petition based upon the personal guarantee that he signed in connection with the DRRS Loan and Supplemental Loan.

b. **Kamlesh Patel**

41. On or about August 22, 2022, the Debtor obtained a personal loan from Kamlesh Patel ("Kamlesh") by executing a promissory note in the principal amount of $250,000 (the "Kamlesh Patel Note"), together with a security agreement that granted Kamlesh a security interest in the "Borrower's Resident [sic] & Business"[2]. The Kamlesh Patel Note provided for the repayment of principal and interest by November 22, 2022, but was silent as to the interest rate amount.

42. Upon information and belief, the Debtor orally agreed to repay Kamlesh at an interest rate of 7%.

---

[2] Upon information and belief, the Debtor did not own any real property as his residence at the time the Kamlesh Patel Note was executed.

{F0207780 - 1}  8

43. Kamlesh gave the Debtor a total of $195,000 on account of the Kamlesh Patel Note, $90,000 of which was paid to the Debtor in cash. The remaining loan was paid to the Debtor as follows: $50,000 paid on August 22, 2022 (Check No. 226), $25,000 paid on August 22, 2022 (Check No. 597605), and $30,000 paid on August 23, 2022 (Check No. 227).

44. As collateral and to induce Kamlesh to loan the Debtor money, upon information and belief, the Debtor gave Kamlesh several blank personal checks to hold and told Kamlesh that if he needed repayment, Kamlesh could receive payment by writing himself one of the checks with advance notice to the Debtor.

45. During the week immediately following receipt of the loan from Kamlesh, the Debtor used the loan proceeds to pay an online gambling debt to Everi Monticello ($4,183.95), made wire transfers to Bhavin Patel ($25,000), Vishalkumar Patel ($15,000), and Sandipkumar Patel ($23,500), paid an individual named Ila $5,000 via Zelle, and transferred $8,000 into his personal brokerage account at Chase Bank.

46. On November 9, 2022, after receiving the proceeds of the DRRS Loan, the Debtor issued 2 wire transfers of $25,000 each ($50,000 total) to Kamlesh Patel, in partial repayment of the Kamlesh Patel Note.

47. The Debtor scheduled the entire $250,000 liability owed to Kamlesh on Schedule F of his bankruptcy petition.

c. **Other Fraudulent Transfers**

48. The Debtor engaged in near daily transactions of borrowing from and lending to dozens of individuals between 2020 and 2023 in perpetration of his Ponzi scheme, while enriching himself in the process.

49. Below are some examples of the Debtor's financial activities that illustrate the Ponzi scheme:

   a. On February 10, 2021, the Debtor received a check from Nimisha Patel and Viral L. Patel for $10,000. Two days later, on February 12, 2021, the Debtor received another $10,000 check from Michael D. Kleinberg. Four days after that, on February 16, 2021, the Debtor wrote a check to Shivangini Patel for $20,000.

   b. On February 17, 2021, the Debtor deposited a check for $70,000 from Divyesh Patel with the word "Borrowed!!" written on the memo line on the check. The next day, the Debtor used the funds from Divyesh Patel to repay a $40,000 debt to Bharatkumar T. Rana and transferred another $40,000 into his personal Chase brokerage account.

   c. On March 11, 18 and 19, 2021, the Debtor received three $5,000 Zelle transfers ($15,000 total) from Diveyshkumar Patel. On March 23, 2021, the Debtor used those funds to repay Govindbhai S. Patel $12,000 on account of two prior $6,000 loans that Govindbhai gave the Debtor on December 21, 2020 and February 12, 2021.

   d. On March 23, 2021, Bharatkumar T. Rana gave the Debtor a $174,000 loan, which was deposited into the Debtor's Chase bank account. Over the following week, the Debtor used the loan proceeds to pay $28,370 to Sudarshan Matmudar, $30,000 to Bansari Patel, $50,000 to Viral Patel (with a memo note "Barrow [sic]"), $35,000 to Vandana Patel, and he transferred $50,000 into his Chase and Vanguard brokerage accounts.

e. On June 16, 2021, the Debtor deposited, into his personal Chase bank account, payments from Sun Mgmt LLC ($19,345), Dhanyog LLC ($15,476) and MA Laxmi Hotel LLC ($5,803.50), which upon information and belief, were payments for hotel supplies that those companies purchased from Janvi. The same day the Debtor received those payments, he used those funds to repay a loan to Govindbhai S. Patel by issuing a check to Govindbhai for $13,000 with the memo "Paid Back".

f. On August 5 and 13, 2021, the Debtor received into his personal Chase bank account two Zelle payments totaling $9,000 from Integrity Construction, LLC which, upon information and belief, were payments for contracted services from Janvi. On August 20, 2021, the Debtor used those funds to wire $10,000 to Kiritkumar Patel and used the reference "Pay Back Loan" in connection with the wire transfer.

g. On September 10, 2021, the Debtor received an incoming wire transfer from Bipinbhai A. Patel in Texas for $50,0000. The same day, the Debtor sent an outgoing wire to Shivangini Rana for $50,000 with the wire transfer reference "Paid Back".

h. On December 30, 2021, the Debtor received an incoming wire transfer from Niravkumar Patel in Mississippi for $250,000. The same day the Debtor received those funds, he wired $14,000 to Mohit Atodari, $15,000 to Govindbhai S. Patel, and paid $5,000 by Zelle to Magiul New. The day after that, he purchased approximately $1,600 in cryptocurrency, transferred $5,000 to his personal savings account, wired $13,000 to Viral L. Patel, $35,000 to

{F0207780 - 1}                            11

    Vishalkumar Patel, and paid $1,500 to Sandipkumar Patel via Zelle. During the following week, the Debtor used the remaining funds from Niravkumar Patel to pay off over $32,000 in personal credit card debt, purchased an additional $5,000 of cryptocurrency, wired $25,000 to Divyesh Patel, wired another $17,000 to Govindbhai S. Patel, and repaid a debt to Chiragbhai Patel of $12,012. The Debtor then transferred $10,000 to his other personal bank account at TD Bank.

  i. In the month of May 2022 alone, the Debtor received $417,180.42 from 9 different individuals and businesses, including $31,000 in cash from unknown sources. None of this money was reported as income on the Debtor's federal or state income tax returns. That same month, the Debtor repaid loans totaling $353,950 to 15 different individuals, repaid a total of $37,024.08 in credit card debt, transferred $25,000 to a Merrill Lynch brokerage account and withdrew $15,012 in cash.

  50. During the two years immediately preceding the Petition Date, between August 23, 2021 and August 23, 2023, as a part of and in furtherance of the Debtor's Ponzi scheme, the Defendants received transfers from the Debtor in the amounts set forth on <u>Exhibit A</u> annexed hereto (collectively, the "Two Year Transfers").

  51. Between August 23, 2019 and August 22, 2021, as part of and in furtherance of the Ponzi scheme, the Defendants received additional transfers from the Debtor in the amounts set forth on <u>Exhibit B</u> annexed hereto (the "Four Year Transfers").

### Preferential Transfers

52. During the one year immediately preceding the Petition Date, between August 23, 2022 and August 23, 2023, the Debtor made transfers to friends, relatives and business partners as set forth in Exhibit C annexed hereto (the "Preference Transfers").

53. Upon information and belief, the Preference Transfers were made on account of antecedent debts owed by the Debtor to the Defendants and were made in connection with the Debtor's fraudulent scheme.

### The Debtor's Insolvency

54. At all relevant times during the four years prior to the Petition Date, between August 23, 2019 and August 23, 2023, the Debtor was insolvent and did not have the ability to pay his debts as they became due.

55. In 2020, the Debtor and his spouse's joint wages were $59,150 according to his federal income tax return. The Debtor's tax return claimed a business loss of $262,978 for that year.

56. In 2021, the Debtor and his spouse's joint wages were $40,118 according to his federal income tax return. The Debtor had carried over business losses from the prior year and his tax return reflected a negative adjusted gross income for 2021 of $97,099.

57. In 2022, the Debtor's amended federal income tax return reflected negative adjusted gross income of $7,692 from carried over business losses combined with zero wages.

58. In 2023, the Debtor's bankruptcy schedules reflect that he earned gross income of $19,666 and zero income was earned during the six months prior to the Petition Date.

59. Between 2020 and the Petition Date, the Debtor obtained hundreds of thousands of dollars in personal loans and credit card debt which he had no ability to repay.

## COUNT ONE
### (For Turnover and Accounting- 11 U.S.C. §542)

60. The Plaintiff repeats and realleges the allegations contained in the previous paragraphs of this Complaint as if the same were fully set forth herein.

61. The Two Year Transfers, Four Year Transfers, and Preference Transfers (collectively, the "Transfers") constitute property that may be recovered by the Trustee pursuant to 11 U.S.C. §550.

62. The Transfers constitute property of the estate pursuant to 11 U.S.C. §541(a)(3).

63. The Trustee is entitled to the turnover and an accounting of the Transfers from the Defendants pursuant to 11 U.S.C. §542(a).

WHEREFORE, the Plaintiff demands judgment on Count One of the Complaint for (i) an accounting and turnover of the Transfers pursuant to 11 U.S.C. §542; (ii) for attorneys' fees and costs of suit; and (iii) such other relief as is just and proper.

## COUNT TWO
### (To Avoid and Recover Fraudulent Transfers – 11 U.S.C. §§ 548(a)(1)(A), 550 and 551)

64. The Plaintiff repeats and realleges the allegations contained in the previous paragraphs of this Complaint as if the same were fully set forth herein.

65. The Two Year Transfers were made during the two years prior to the Petition Date.

66. The Two Year Transfers were made with the actual intent to hinder, delay or defraud some or all of the Debtor's then existing or future creditors.

67. The Two Year Transfers are avoidable by the Trustee pursuant to 11 U.S.C. §548(a)(1)(A).

68. The Two Year Transfers are recoverable by the Trustee from the Defendants pursuant to 11 U.S.C. §550(a).

69. The avoided Two Year Transfers are preserved for the benefit of the estate pursuant to 11 U.S.C. §551.

WHEREFORE, the Plaintiff demands judgment on Count Two of the Complaint (i) avoiding the Two Year Transfers pursuant to 11 U.S.C. §548(a)(1)(A); (ii) recovering the Two Year Transfers from the Defendants pursuant to 11 U.S.C. §§550; (iii) preserving the avoided Two Year Transfers for the benefit of the estate pursuant to 11 U.S.C. §551; (iv) for attorneys' fees and costs of suit; and (v) such other relief as is just and proper.

**COUNT THREE**
**(To Avoid and Recover Fraudulent Transfers –**
**11 U.S.C. §§548(a)(1)(B), 550 and 551)**

70. The Plaintiff repeats and realleges the allegations contained in the previous paragraphs of this Complaint as if the same were fully set forth herein.

71. The Two Year Transfers were made during the two years prior to the Petition Date.

72. The Debtor received less than reasonably equivalent value in exchange for the Two Year Transfers.

73. The Debtor was insolvent on the date each of the Two Year Transfers were made or became insolvent as a result of the Two Year Transfers.

74. At the time each of the Two Year Transfers were made, the Debtor was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the Debtor was an unreasonably small capital.

75. At the time each of the Two Year Transfers were made, the Debtor intended to incur, or believed he would incur, debts that would be beyond his ability to repay as such debts matured.

76. The Two Year Transfers constitute fraudulent transfers that are avoidable by the Trustee pursuant to 11 U.S.C. §548(a)(1)(B).

77. The Two Year Transfers are recoverable by the Trustee from the Defendants pursuant to 11 U.S.C. §55t0(a)

78. The avoided Two Year Transfers are preserved for the benefit of the estate pursuant to 11 U.S.C. §551.

WHEREFORE, the Plaintiff demands judgment on Count Three of the Complaint (i) avoiding the Two Year Transfers pursuant to 11 U.S.C. §548(a)(1)(B); (ii) recovering the Two Year Transfers from the Defendants pursuant to 11 U.S.C. §§550; (iii) preserving the avoided Two Year Transfers for the benefit of the estate pursuant to 11 U.S.C. §551; (iv) for attorneys' fees and costs of suit; and (v) such other relief as is just and proper.

**COUNT FOUR**
**(To Avoid Fraudulent Transfers Under the New Jersey**
**Uniform Voidable Transactions Act - N.J.S.A 25:2-25(a)(1)**

79. The Plaintiff repeats and realleges the allegations contained in the previous paragraphs of this Complaint as if the same were fully set forth herein.

80. The Two Year and Four Year Transfers were made during the four years prior to the Petition Date and the appointment of the Trustee.

81. This Complaint is filed less than one year after the Trustee's discovery of the Two Year and Four Year Transfers.

82. The Two Year and Four Year Transfers were made with the actual intent to hinder, delay or defraud any creditor of the Debtor.

83. The Debtor was insolvent when the Two Year and Four Year Transfers were made.

{F0207780 - 1}  16

84. The Two Year and Four Year Transfers are voidable pursuant to N.J.S.A. 25:2-25(a)(1), made applicable to bankruptcy proceedings by 11 U.S.C. §544.

85. The Trustee may recover the value of the Two Year and Four Year Transfers from the Defendants pursuant to 11 U.S.C. §550.

WHEREFORE, the Plaintiff demands judgment on Count Four of the Complaint (i) voiding the Two Year and Four Year Transfers pursuant to N.J.S.A. 25:2-25(a)(1) and 11 U.S.C. §544; (ii) recovering the Two Year and Four Year Transfers from the Defendants pursuant to 11 U.S.C. §§550; (iii) preserving the avoided Two Year and Four Year Transfers for the benefit of the estate pursuant to 11 U.S.C. §551; (iv) for attorneys' fees and costs of suit; and (v) such other relief as is just and proper.

**COUNT FIVE**
**(To Avoid Fraudulent Transfers Under the New Jersey**
**Uniform Voidable Transactions Act - N.J.S.A 25:2-25(a)(2)**

86. The Plaintiff repeats and realleges the allegations contained in the previous paragraphs of this Complaint as if the same were fully set forth herein.

87. The Two Year and Four Year Transfers were made during the four years prior to the Petition Date and the appointment of the Trustee.

88. This Complaint is filed less than one year after the Trustee's discovery of the Two Year and Four Year Transfers.

89. The Debtor received less than reasonably equivalent value in exchange for each of the Two Year and Four Year Transfers.

90. At the time the Two Year and Four Year Transfers were made, the Debtor was engaged in or was about to engage in a business or a transaction for which the remaining assets of the Debtor were unreasonably small in relation to the business or transaction.

91. At the time the Two Year and Four Year Transfers were made, the Debtor intended to incur, or believed or reasonably should have believed that the Debtor would incur debts beyond his ability to pay as they became due.

92. The Debtor was insolvent when the Two Year and Four Year Transfers were made.

93. The Two Year and Four Year Transfers are voidable pursuant to N.J.S.A. 25:2-25(a)(2), made applicable to bankruptcy proceedings by 11 U.S.C. §544.

94. The Trustee may recover the value of the Two Year and Four Year Transfers from the Defendants pursuant to 11 U.S.C. §550.

WHEREFORE, the Plaintiff demands judgment on Count Five of the Complaint (i) voiding the Two Year and Four Year Transfers pursuant to N.J.S.A. 25:2-25(a)(2) and 11 U.S.C. §544; (ii) recovering the Two Year and Four Year Transfers from the Defendants pursuant to 11 U.S.C. §§550; (iii) preserving the avoided Two Year and Four Year Transfers for the benefit of the estate pursuant to 11 U.S.C. §551; (iv) for attorneys' fees and costs of suit; and (v) for such other relief as is just and proper.

### COUNT SIX
### (To Avoid and Recover Preference Transfers- 11 U.S.C. §§ 547, 550 and 551)

95. The Plaintiff repeats and realleges the allegations contained in the previous paragraphs of this Complaint as if the same were fully set forth herein.

96. The Preference Transfers constituted a transfer of the Debtor's interest in property of the estate.

97. The Preference Transfers were made to or for the benefit of creditors of the Debtor.

98. The Preference Transfers were made for or on account of an antecedent debt owed by the Debtor before such transfer was made.

99. The Preference Transfers were made while the Debtor was insolvent.

100. The Preference Transfers were made to insiders of the Debtor.

101. The Preference Transfers were made within one year prior to the Petition Date.

102. The Preference Transfers enabled the Defendants to receive more than they would have received under chapter 7 of the Bankruptcy Code, if the Preference Transfers had not been made, and if such Defendants received payment to the extent provided by the provisions of the Bankruptcy Code.

WHEREFORE, the Plaintiff demands judgment on Count Six of the Complaint (i) avoiding the Preference Transfers pursuant to 11 U.S.C. §547; (ii) recovering the Preference Transfers from the Defendants pursuant to 11 U.S.C. §550; (iii) preserving the avoided Preference Transfers for the benefit of the estate pursuant to 11 U.S.C. §551; (iv) for attorneys' fees and costs of suit; and (v) for such other relief as is just and proper.

## COUNT SEVEN
### (Unjust Enrichment)

103. The Plaintiff repeats and realleges the allegations contained in the previous paragraphs of this Complaint as if the same were fully set forth herein.

104. The Transfers are recoverable by the Trustee under 11 U.S.C. §550.

105. The Transfers are property of the Debtor's estate under 11 U.S.C. §541(a)(3).

106. The Defendants used the Transfers for their personal benefit and enrichment.

107. The Defendants have not compensated the Debtor or his chapter 7 estate for their unlawful use of the Transfers.

108. The Defendants have been unjustly enriched by their use and retention of the Transfers.

109. The Debtor's estate has been damaged as a result of the Defendants' unlawful use and retention of the Transfers without just compensation to the estate.

WHEREFORE, the Plaintiff demands judgment on Count Seven of the Complaint (i) for unjust enrichment, (ii) for attorneys' fees and costs of suit; and (iii) for such other relief as is just and proper.

                                              FORMAN HOLT
                                              Attorneys for Charles M. Forman,
                                              Chapter 7 Trustee

Dated: May 15, 2024                By:     /s/ Kimberly J. Salomon
                                                   Kimberly J. Salomon